IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

EDGAR LOPEZ MALLQUI,     )
             )
   Petitioner,     )
             )
  v.         )   1:26-cv-842 (LMB/WEF)
             )
TODD M. LYONS, et al.,     )
             )
   Respondents.     )

## ORDER

Petitioner Edgar Lopez Mallqui ("Mallqui"), a native and citizen of Peru, has filed a three-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") agency since March 12, 2026. Specifically, he alleges that his characterization by DHS as an "applicant for admission" pursuant to 8 U.S.C. § 1225(a), thus subjecting him to mandatory detention under 8 U.S.C. § 1225(b)(1), violates the Immigration and Nationality Act (Count I), the bond regulations (Count II), and his due process rights (Count III).

Mallqui is currently detained at the Farmville Detention Center, which is within this Court's jurisdiction and the basis upon which he is suing Jeffrey Crawford, the warden of the Farmville Detention Center. Mallqui has also sued Todd M. Lyons, the Acting Director of ICE, and Joseph Simon, the Acting Director of the Washington Field Office of ICE's Enforcement and Removal Operations (collectively, "the federal respondents"). For the reasons discussed in this Order, Mallqui's Petition will be denied without prejudice.

The following facts are undisputed. Mallqui is a 32-year-old native and citizen of Peru. [Dkt. No. 5-1] at ¶ 5. On or about July 7, 2024, Customs and Border Protection agents

encountered Mallqui "shortly after he entered the United States by unlawfully crossing the international border between the United States and Mexico." Id. ¶ 6. The agents detained Mallqui and served him with a Form I-860, Notice and Order of Expedited Removal pursuant to 8 U.S.C. § 1225(b)(1)(A). Id. Mallqui expressed a fear of returning to Peru and was referred for a credible fear interview. Id. ¶ 7; see 8 U.S.C. § 1225(b)(1)(A)(i)–(ii). Because an asylum officer determined that Mallqui had a credible fear of returning to Peru, he was placed into standard removal proceedings pursuant to 8 U.S.C. § 1229a and issued a Notice to Appear that charged him with being inadmissible to the United States. [Dkt. No. 5-1] at ¶ 8. On August 22, 2024, Mallqui was released from ICE custody on interim parole. Id. ¶ 9. On November 25, 2025, an Immigration Judge denied Mallqui's applications for asylum, withholding of removal, and relief under the Convention Against Torture. Id. ¶ 10. Mallqui has appealed that decision to the Board of Immigration Appeals, where it is pending. Id. ¶ 12.

On December 7, 2025, Mallqui was arrested by local authorities for felony possession of narcotics and intoxication in public.[1] Id. ¶ 11. According to the Fairfax County General District Court docket sheets, Mallqui was released on his own recognizance, and as of April 28, 2026, both matters remain pending. On March 5, 2026, Mallqui was arrested again by local authorities for felony possession of narcotics, peeping into the dwelling of another, and indecent exposure. Id. ¶ 13. According to the Fairfax County General District Court docket sheets, Mallqui was released on his own recognizance, and as of April 28, 2026, those matters remain pending. A

---

[1] Although the federal respondents did not point to Mallqui's December 7, 2025 arrest for intoxication in public, the Fairfax County General District Court records reveal that Mallqui was arrested for both offenses on that date.

few days later, on March 12, 2026, ICE agents took Mallqui "into civil immigration custody for violating the terms of his release due to his multiple criminal arrests."[2] Id. ¶ 14.

Mallqui filed his Petition for Writ of Habeas Corpus on April 3, 2026. [Dkt. No. 1]. The Court subsequently entered an Order requiring that he not "be removed or transferred from this district for any reason without this Court's permission" and directing the federal respondents to "file either a Notice indicating that the factual and legal issues presented in this Petition do not differ in any material fashion from those presented in Ceba Cinta v. Noem, et al., 1:25-cv-1818 (E.D. Va.), or an Opposition to the Petition discussing the material differences between Ceba Cinta and this Petition." [Dkt. No. 2] at 1. The federal respondents filed an opposition, [Dkt. No. 5], and Mallqui has filed a reply, [Dkt. No. 6]. Finding that oral argument will not aid the decisional process, the Petition will be resolved on the papers submitted.

The Court must first consider whether Mallqui is subject to mandatory detention under 8 U.S.C. § 1225(b)(1), as the federal respondents argue, or instead subject to discretionary detention under 8 U.S.C. § 1226(a), as Mallqui argues. It is undisputed that when Customs and Border Protection agents first encountered Mallqui shortly after he crossed the border, they detained him pursuant to § 1225(b)(1), [Dkt. No. 5-1] at ¶ 6; [Dkt. No. 6] at 2; however, Mallqui argues that DHS's detention authority has since shifted from § 1225(b)(1) to § 1226(a) because he was placed into standard (rather than expedited) removal proceedings. [Dkt. No. 6] at 2.

That argument is unpersuasive because § 1225(b)(1) explicitly contemplates mandatory detention during the pendency of standard removal proceedings for noncitizens who have been found to have a credible fear of persecution. When a noncitizen is detained under § 1225(b)(1) and expresses a credible fear of persecution, the noncitizen is placed into standard removal

---

[2] Mallqui does not dispute that he violated the terms of his release.

proceedings pursuant to § 1229a, at which time he may present his asylum application to an Immigration Judge. See DHS v. Thuraissigiam, 591 U.S. 103, 110 (2020). During the Executive Office of Immigration Review's ("EOIR") "consideration of the application for asylum," the noncitizen "shall be detained." 8 U.S.C. § 1225(b)(1)(B)(ii). Put differently, the "plain meaning" of § 1225(b)(1)(B)(ii) requires "that detention must continue until immigration officers have finished 'consider[ing]' the application for asylum." Jennings v. Rodriguez, 583 U.S. 281, 299 (2018).

When Mallqui was apprehended by Customs and Border Protection agents, he was initially placed into expedited removal proceedings under § 1225(b)(1), but because he expressed a credible fear of returning to Peru, he was transferred from expedited to standard removal proceedings. [Dkt. No. 5-1] at ¶ 8. Mallqui appeared before an Immigration Judge to contest the charges of removability and to present his asylum application, but the Immigration Judge denied his applications for relief and ordered his removal to Peru—findings which Mallqui has appealed. Id. ¶¶ 10, 12. Because the EOIR has not finished considering the merits of his asylum application, id. ¶ 12, § 1225(b)(1)(B)(ii) continues to govern Mallqui's detention.

Mallqui further argues that DHS's detention authority shifted from § 1225(b)(1) to § 1226(a) because he was paroled into the United States under 8 U.S.C. § 1182(d)(5)(A).[3] [Dkt. No. 6] at 2. This argument is unavailing because § 1182(d)(5)(A) explicitly states that a noncitizen's release on parole "shall not be regarded as an admission of the alien." Rather, the statute provides that once parole is lawfully revoked, "the alien shall forthwith return or be

---

[3] Although it is not entirely clear from the record that Mallqui was paroled into the United States under 8 U.S.C. § 1182(d)(5)(A), the federal respondents reference that provision in their opposition, [Dkt. No. 5] at 5, and Mallqui has not indicated that he was paroled pursuant to a different statutory provision.

returned to the custody from which he was paroled." 8 U.S.C. § 1182(d)(5)(A). In other words, § 1182(d)(5)(A) "permits a non-citizen to physically enter the country, subject to a reservation of rights by the Government that it may continue to treat the non-citizen as if stopped at the border." Martinez v. Hyde, 792 F. Supp. 3d 211, 215 (D. Mass. 2025) (cleaned up). Here, although Mallqui was paroled into the United States on August 22, 2024, [Dkt. No. 5-1] at ¶ 9, his parole was revoked by the federal respondents, and Mallqui was "returned to the custody from which he was paroled"—§ 1225(b)(1). See 8 U.S.C. § 1182(d)(5)(A); accord Olaya Rodriguez v. Bondi, No. 1:25-cv-791, 2025 WL 2490670, at *2–3 & n.10 (E.D. Va. June 24, 2025). In sum, that Mallqui was paroled into the United States does not demonstrate that he is now entitled to a bond hearing under § 1226(a).[4]

As it relates to Mallqui's due process claim, the Court recognizes that, even in the context of mandatory detention, "courts have found that prolonged detention without a proper bond hearing can violate due process." Olaya Rodriguez, 2025 WL 2490670, at *3; see Mbalivoto v. Holt, 527 F. Supp. 3d 838, 847 (E.D. Va. 2020) ("[A]t some point immigration detention becomes unreasonable and therefore unconstitutional."). In evaluating whether ongoing detention under § 1225(b)(1) without a bond hearing violates due process, the "duration of detention" is "the most important" consideration. Portillo v. Hott, 322 F. Supp. 3d 698, 707 (E.D. Va. 2018). As this Court explained in Portillo:

> Although the duration inquiry does not admit of hard and fast parameters, courts seem to agree that the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past the

---

[4] The Court recognizes that some other federal district courts have reached a contrary conclusion. See, e.g., Qasemi v. Francis, No. 1:25-cv-10029, 2025 WL 3654098 (S.D.N.Y. Dec. 17, 2025); Montiel v. Raycraft, No. 1:25-cv-1610, 2026 WL 32076 (W.D. Mich. Jan. 6, 2026); Abdirashid H. M. v. Noem, No. 0:25-cv-4779, 2026 WL 127698 (D. Minn. Jan. 9, 2026). Nonetheless, the Court finds that the clear text of §§ 1225(b)(1) and 1182(d)(5)(A), as well as the Supreme Court's statements in Jennings, compel a finding that Mallqui is detained under § 1225(b)(1).

one and a half month average and five month maximum thresholds cited by the Supreme Court in <u>Demore v. Kim</u>. This approach also aligns with the concerns expressed in <u>Zadvydas v. Davis</u> about detention in excess of six months.

<u>Id.</u> (cleaned up). Here, Mallqui has been detained for approximately 47 days, "which is substantially less than the length of detention that courts have previously determined would constitutionally require a hearing under the Due Process Clause." <u>Olaya Rodriguez</u>, 2025 WL 2490670, at *3; <u>see, e.g.</u>, <u>Portillo</u>, 322 F. Supp. 3d at 707 (fourteen months); <u>Mauricio-Vasquez v. Crawford</u>, No. 1:16-cv-01422, 2017 WL 1476349, at *4 (E.D. Va. Apr. 24, 2017) (fifteen months); <u>Mbalivoto</u>, 527 F. Supp. 3d at 850 (twenty-two months); <u>Songlin v. Crawford</u>, No. 3:19-cv-895, 2020 WL 5240580, at *7 (E.D. Va. Sept. 2, 2020) (sixteen months); <u>Abreu v. Crawford</u>, No. 1:24-cv-01782, 2025 WL 51475, at *5 (E.D. Va. Jan. 8, 2025) (twenty-five, seventeen, and thirteen months). Given that the amount of time Mallqui has spent in detention has not reached the limits articulated in <u>Demore</u> and <u>Zadvydas</u>, the Court finds that due process does not entitle Mallqui to a bond hearing at this time.

In sum, absent a statutory requirement that Mallqui receive a bond hearing or a detention that is sufficiently long to violate due process, the Court has no basis upon which it may grant the Petition. For these reasons, it is hereby

ORDERED that the Petition, [Dkt. No. 1], be and is DENIED WITHOUT PREJUDICE as to Mallqui's ability to file a renewed habeas petition after he has remained in civil immigration custody for six months.

The Clerk is directed to enter judgment in the federal respondents' favor pursuant to Federal Rule of Civil Procedure 58, forward a copy of this Order to counsel of record, and close this civil action.

Entered this 29 day of April, 2026.

Alexandria, Virginia

_____/s/_____

Leonie M. Brinkema
United States District Judge

6